IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**EUGENE FAJARDO,**

      **Plaintiff,**

vs.                                                                                                  Civ. No. 04-389 RHS

**JO ANNE B. BARNHART,**
**Commissioner of the Social**
**Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO REMAND

      This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing ("Motion"), filed September 9, 2004 **[Doc. 11]**. Having considered the parties' submissions, the applicable law and being otherwise advised in the premises, the Court finds that Plaintiff's Motion is well-taken, and this matter will be remanded for further proceedings.

*Procedural History*

      Plaintiff has filed two applications for Supplemental Security Income ("SSI") benefits. The issues before the Court arise from Plaintiff's second application, filed on July 8, 1997, with a protective filing date of February 8, 1997. (Tr. at 75.) On August 11, 1997, the Social Security Administration ("SSA") found that Plaintiff was medically disabled as of February 1997. (Tr. at 23.) Plaintiff's record was set up as a disabled individual with an ineligible spouse. (Tr. at 23.) At some point, the SSA "apparently informed the claimant that his Public Employee's Retirement Association (PERA) pension of $503.55 per month was countable as unearned income and, therefore, his benefits were subject to an offset that would be reduced accordingly." (Tr. at 23.)

      In a Request for Reconsideration, Plaintiff "objected to the [SSA's] decision to deduct his

PERA pension," contending that, "one-half [of the pension] was . . . [his wife's] as community property." (Tr. at 23.) The SSA issued a Notice of Reconsideration in September 1998, stating that "the last verified amount of your PERA pension was $503.55 per month [and, after applying the] . . . . general income disregard . . . . [the difference will be] deduct[ed] . . . dollar for dollar against [your monthly] SSI Benefit Rate." (Tr. at 50.) Plaintiff filed a Request for Hearing.

On March 17, 2000, following an administrative hearing, Administrative Law Judge ("ALJ") Robert Schatz determined that under community property principles, the pension "is owed fully to the wife and fully to the husband," and found that the "PERA check in the current amount of $534.22 is unearned income countable to Mr. Fajardo." (Tr. at 125, 126.) Following Plaintiff's appeal of this decision, the Appeals Council vacated the March 17, 2000 decision and remanded the matter for further proceedings. (Tr. at 24.)

A second hearing was held before ALJ Kathleen Switzer. Plaintiff pointed to <u>New Mexico Department of Human Services v. Department of Health and Human Services Health Care Financing Administration</u>, ("<u>Jeffries</u>[1]") 4 F.3d 882 (10th Cir. 1993) in support of his argument that state community property law should determine income ownership of the pension payment. However, the ALJ concluded that the holding of <u>Jeffries</u> did not apply in this case, because "<u>Jeffries</u> involved the . . . Medicaid laws under Title XIX . . . and the present case involves . . . Title XVI of the [Social Security] Act."[2] (Tr. at 25.) After determining that <u>Jeffries</u> did not

---

[1]Willie Ray Jeffries is listed in the case caption as an intervenor, "individually and on behalf of a class of persons similarly situated." <u>Id.</u> 4 F.3d at 882.

[2]The ALJ did not explain how this distinction precludes the application of state community property law to determine income ownership in the SSI program or point to any specific law either prohibiting the use of state law or mandating use of any other method to determine income ownership.

control, the ALJ found that "there is no basis in the Act, Regulations or applicable case law for applying state community property laws to SSI income and resource determinations." (Id.) "Accordingly, the claimant's entire PERA pension, including insurance premium deductions, is countable income for him."[3] (Id.) On February 5, 2004, the Appeals Council denied Plaintiff's request for a review, thus rendering ALJ Switzer's decision the final decision of the Commissioner. (Tr. at 6-8.) Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

### *Allegations of Error*

Plaintiff alleges the following errors: (1) the ALJ erred in "applying the 'name-on-the-check rule' to a married claimant's retirement check in a community property state by refusing to recognize half interest as the wife's" (Plaintiff's Memorandum in Support of Motion at 5); and (2) the ALJ erred by counting as income "health insurance premiums deducted from [the] state pension check . . . to insure claimant's wife" (Id. at 12.)

### *Standard of review*

In reviewing the Commissioner's final decision, the Court must affirm the ALJ's decision if: (1) it is supported by substantial evidence, and (2) the correct legal tests were applied. Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993) (citations omitted). Moreover, in this case, the Court "must consider the deference due the [Commissioner's] interpretation of the statute she administers." New Mexico Department of Human Services v. Department of Health

---

[3]The PERA pension payments were issued in Plaintiff's name (not his wife's). The method used by the ALJ to determine that the pension payment was Plaintiff's income will be referred to as the "name-on-the-check" rule.

and Human Services Health Care Financing Administration, ("Jeffries[4]") 4 F.3d 882, 884 (10th Cir. 1993) (citations omitted). "When Congress explicitly delegates to an agency the authority to elucidate a specific statutory provision, the agency's interpretation is given controlling weight unless arbitrary, capricious, or manifestly contrary to the statute." Id., 4 F.3d at 884-85 (citations omitted).

Here, as in Jeffries, "there is no indication that Congress explicitly delegated to the SSA the authority to resolve issues regarding the ownership of income. Absent such an explicit delegation, the agency's interpretation generally controls if it is reasonable and consistently applied, though no deference is warranted if the interpretation is inconsistent with the legislative intent . . . of the statute or if there are other compelling indications that it is wrong." Id., 4 F.3d at 884-85 (citations omitted).

### I.   *First Allegation of Error*

The first issue is whether ownership of the pension check, issued in Plaintiff's name, should be attributed between Plaintiff and his spouse pursuant to New Mexico community property principles. The parties do not dispute that, under New Mexico state law, community property principles establish the ownership rights of husband and wife to income acquired during marriage. See Ruggles v. Ruggles, 116 N.M. 52, 62, 860 P.2d 182, 192 (N.M. 1993) (explaining that a fundamental principle of community property law in New Mexico is "that each spouse in a marriage has a present, vested one-half interest in the spouses' community property"); DeTevis v. Aragon, 104 N.M. 793, 727 P.2d 558, 563 (Ct.App. 1986). Nor do the parties dispute that under New Mexico state law, the pension payments at issue are considered community property. The

---

[4]Willie Ray Jeffries is listed in the case caption as an intervenor, "individually and on behalf of a class of persons similarly situated." Id. 4 F.3d at 882.

parties disagree over whether state community property law should apply in resolving income ownership determinations in the context of the SSI program.

The SSI program provides financial aid to needy elderly, blind and disabled people.  See 42 U.S.C. § 1381 *et seq*.  According to relevant federal regulations, "income" is described as "anything you receive in cash or in kind that you can use to meet your needs for food, clothing, or shelter."  20 C.F.R. § 416.1102.  The regulations further distinguish between "earned" and "unearned" income.[5]  See 20 C.F.R. § 416.1121(a).  The Tenth Circuit Court of Appeals pointed out that "the pertinent statutes relating to income definition and computation do not even address--much less expressly authorize the [Commissioner] to resolve--the matter of income *ownership*."  Jeffries, 4 F.3d at 885 (emphasis in original).

Plaintiff cites to a line of cases ("Medicaid cases"), the most prominent one being Jeffries, in support of his argument that state community property law should apply in attributing ownership of the pension payment at issue.  See also Department of Health Services of the State of California v. Secretary of Health & Human Services, 823 F.2d 323 (9th Cir. 1987); State of Washington, Department of Social and Health Services v. Bowen, 815 F.2d 549 (9th Cir. 1987).  The Medicaid cases examined the role of state law in attributing income within the Medicaid program, and in each case the court found that state community property law determined income ownership.  In Jeffries, the Tenth Circuit Court of Appeals concluded "that Congress intended to rely on, rather than supplant, state family property law and that imposition of the Secretary's name-on-the-check rule . . . contrary to state community property law is therefore inconsistent with the Medicaid statute."  Id. 4 F.3d at 886.

---

[5]The parties do not disagree that the pension payments are unearned income under the regulations.

The Commissioner contends that the "Medicaid cases" are distinguishable, and thus, the principles and holdings of those cases do not apply here.  For example, the Commissioner points out that where the "Medicaid cases" focused on the application of state law within a joint federal-state program, this case examines the role of state law within a federally administered program.  Specifically, the Commissioner argues that the Court in California "recognized . . . that the [Medicaid and SSI] procedures did not have to mirror each other[,] . . . . [thus, that Court's] conclu[sion] that community property laws must be used in Medicaid income calculations involving an institutionalized spouse has *no effect* on the calculation of income under the SSI program." (Defendant's Response to Plaintiff's Motion ("Response") at 7 **[Doc. 19]** (emphasis added).)

The Court does not find this argument persuasive.  While the California Court found that states need not rely exclusively on SSI methodologies in determining Medicaid eligibility, the same Court also noted that "the SSI statute and its regulations offer no guidance because they do not expressly define the terms 'income' and 'available', the key terms upon which this case turns." California, 823 F.2d at 327 (citing Bowen, 815 F.2d at 555).[6]  The Tenth Circuit Court of Appeals observed that "the pertinent statutes relating to income definition and computation do not even address . . . the matter of income *ownership* at issue in this case." Jeffries, 4 F.3d at 885.  Finally, while certain distinctions exist between the facts and circumstances of the Medicaid cases and the instant case, many of the key principles and considerations in those cases apply with equal force here.

---

[6]The Court in Bowen similarly noted that "the statute and regulations of the SSI program do not expressly define the terms income and available, nor do they mention the name-on-the-check rule." Id. 815 F.2d at 555 (citations and internal quotations omitted).

The Commissioner argues that "even if the Commissioner were to apply New Mexico community property law in this case, there would not be a different result," because under state law "Plaintiff had the sole management and control of his pension benefit." (Response at 8 (citing N.M. STAT. ANN. § 40-3-14(B).) The Commissioner does not adequately explain how this statutory provision affects a determination of income ownership. Nor is it apparent that the statute obviates any ownership interest that Plaintiff's spouse has in the pension payments. See, e.g., Herrera v. Health and Social Services, Department of the State of New Mexico, 587 P.2d 1342, 1346, 92 N.M. 331, 335 (N.M. Ct. App. 1978) (distinguishing "between the power to manage and control and actual availability" and concluding "that ultimately no more than one-half of the community property is available to each spouse"). Indeed, neither party contends that § 40-3-14(B) divests Plaintiff's spouse of her present, vested right to one-half of the pension payment

*Federal Preemption*

With respect to statutory interpretation and preemption, the Court in Jeffries noted some very important considerations "bear[ing] directly on the controlling question of Congressional intent." Id., 4 F.3d at 885. First, "it must be remembered that Congress acts . . . against the background of the total *corpus juris* of the states." Id. (citation and internal quotations omitted). As an example, the Tenth Circuit Court of Appeals pointed out that "in the tax area . . . state law controls the attribution of income." Id. (citations omitted). Second, "the particular area of state law with which we are concerned, dealing with matters of family relations . . . weighs heavily in favor of honoring the state's policy choices." Id. The Court emphasized that "[c]ommunity property is not a fiction and is not lightly to be disregarded." Id. Finally, the Court noted that where "coordinated state and federal efforts exist [as in the Medicaid program]. . . the case for federal preemption is less persuasive as a general matter." Id., 4 F.3d at 886. Of these three

7

considerations, only the last does not apply in this case with the same force as in Jeffries, the distinction being that the SSI program is not a joint federal-state effort.

The test as to whether federal law preempts state community property law is set forth in Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979). State family property law must do major damage to clear and substantial federal interests before the Supremacy Clause requires that state law be overridden. The relevant inquiry is "(1) whether the right as asserted conflicts with the express terms of federal law *and* (2) whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." Hisquierdo, 439 U.S. at 583 (emphasis added); see also McCarty v. McCarty, 453 U.S. 210, 221 (1981).

(1) Whether state community property law conflicts with express terms of federal law

The "right" asserted by Plaintiff is the allocation of the monthly pension payments according to state community property law. The Commissioner asserts that the application of state community property law in the SSI program conflicts with "the express terms of the Commissioner's regulations regarding calculation of income in SSI cases." (Defendant's Supplemental Brief at 11 **[Doc. 27]**.) However, the regulation to which the Commissioner refers, 20 C.F.R. § 416.110(d), addresses neither the calculation nor ownership of income. Rather, § 416.110(d) explains that a nationwide uniformity of standards in "eligibility requirements and the Federal minimum income level . . . . provides assurance of a minimum income base on which States may build supplementary payments." (Response at 5 (quoting § 416.110(d).)[7]  Moreover,

---

[7]The Commissioner also contends that because "Congress did not choose . . . to exclude from an individual's income calculation one-half of the community property income[,] . . . . [s]uch an exclusion . . . conflict[s] with the Congressional intent to provide a uniform standard for the SSI program." (Response at 5 (citing 42 U.S.C. § 1382a(b).) However, this argument presupposes that the entire pension check is Plaintiff's income, and ignores the issue before the Court. The question is not whether a certain portion of the pension check is properly *excluded*

the Supreme Court has cautioned "against reading differences of state family property law into federal legislation to spell out a lack of uniformity." Jeffries, 4 F.3d at 886 (internal quotations omitted) (quoting Poe v. Seaborn, 292 U.S. 101, 117-18 (1930); citing Chiles v. United States, 843 F.2d 367, 370 (9th Cir. 1988)).

Nothing in the SSI statute or regulations establishes federal criteria for determining ownership of income. Neither party has pointed to any federal statutory provisions or federal regulations evincing an intent to preempt or alter New Mexico state family property law. Indeed, the Commissioner's informal name-on-the-check "interpretation [of income ownership] is contrary to the principle that, as used in federal statutes or regulations, the term should be defined under state law." Bowen, 815 F.2d 549, 554 (9th Cir. 1987) (citations omitted). Accordingly, the Court finds that while state community property rights do appear to conflict with the Commissioner's informal "name-on-the-check" method of determining income ownership, they do not conflict with the express terms of federal law as it pertains to the SSI program.

(2) <u>Whether state law injures the objectives of the federal program</u>

The second question under Hisquierdo is whether assertion of the right to apply community property laws to Plaintiff's pension income injures the objectives of the federal program to the extent that the right should not be recognized. The purpose of the federal SSI program is "to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. § 1381.

The Commissioner argues that applying state law to allocate income between spouses would unnecessarily burden the social security system, require interpretation of "often unsettled

---

from Plaintiff's income, but whether state community property law determines what portion of the pension check *is* Plaintiff's income.

state law," and increase time and costs to process payments. (Defendant's Supplemental Brief at 12.) However, the Commissioner offers no specific support for these allegations. The parties apparently agree that New Mexico community property law is settled regarding the ownership of the pension payment at issue. Moreover, it is not clear how New Mexico community property law would be more burdensome to apply in the SSI context than it is in the Medicaid program. See Jeffries, 4 F.3d 882 (10th Cir. 1993).

The Commissioner also argues that the application of state community property law in the SSI program "would disproportionately impact the very needy that it purports to help." (Defendant's Supplemental Brief at 13.) The Commissioner contends that the status of the claimant and spouse in this case "is not the normal situation," and that the more likely scenario is one in which the SSI claimant "[has] no income and an ineligible spouse with income." (Defendant's Supplemental Brief at 12, 13.) However, the Commissioner does not attempt to quantify the harm or expense she alleges these individuals would suffer[8] or offer any evidence to support her contentions. Thus, the Court finds this argument to be speculative. The Court does not find that the application of New Mexico community property law is incompatible with the objectives of the federal SSI program.

After conducting the relevant inquiry set forth in Hisquierdo, the Court concludes that New Mexico state community property law is not preempted by federal law. In light of a lack of clear federal intent to contravene state community property law, the requisite preemptive legislative intent is lacking. Nor does it appear that the application of state community property

---

[8]For example, it is not clear to what degree the results would vary in such a situation, in light of the Commissioner's "deeming" of income and resources between spouses. See, e.g., 42 U.S.C. § 1382c(f)(1); 20 C.F.R. § 416.1163 (describing "[h]ow we deem income to you from your ineligible spouse").

law will do major damage to the objectives of the SSI program. Although the application of state family property law can reasonably be expected to yield different results for SSI applicants in community and non-community property states, such differences may be attenuated through application of the Commissioner's "deeming" regulations.[9]  Finally, as previously noted, the Court must not presume that differences of state family property law in the context of federal legislation necessarily equate to a lack of uniformity.  See Jeffries, 4 F.3d at 886 (citations and internal quotations omitted).

The Court concludes that Congress intended to rely on state family property law and that the Commissioner's "name-on-the-check" rule is contrary to state community property law and thus, inconsistent with the SSI statute.  In determining Plaintiff's eligibility under SSI, the Commissioner must apply the correct legal standards.  Consequently, to the extent that the Commissioner was required to apply state community property law in determining income ownership between Plaintiff and his spouse, the ALJ committed legal error in failing to do so.

**II.**     *Second Allegation of Error*

Plaintiff contends that the ALJ erred by counting as income "health insurance premiums deducted from [the] state pension check . . . to insure claimant's wife." (Plaintiff's Memorandum in Support of Motion at 12.)  The re-determination of Plaintiff's pension income in accordance with New Mexico community property law potentially affects the Commissioner's findings with respect to the health insurance premiums at issue.  Therefore, upon remand, the Commissioner should re-evaluate the health insurance premiums at issue and proceed as necessary, in accordance with the principles set forth above, and in light of any new or revised findings following the re-

---

[9] See n.8, *supra*.

determination of Plaintiff's pension income.

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Plaintiff's Motion be granted and that this matter be remanded to the Commissioner for additional proceedings consistent with this opinion, to include:

(1)   a re-determination of Plaintiff's pension income in accordance with New Mexico community property law;

and

(2)   a re-evaluation of the health insurance premium deductions, following the re-determination of Plaintiff's pension income.

*Robert Hayes Scott*
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE